LEE, C.J.,
 

 for the Court:
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 1. Loretta Nichols and Danyel N. Nichols were married in 1996 in Gulfport,
 
 *921
 
 Mississippi. The couple had three sons: Michael, born 1996; Gabriel, born 2003; and Uriel, born 2005. The parties separated in 2006. On March 26, 2008, Loretta filed a petition in the Harrison County Chancery Court seeking separate maintenance. In July 2008, a temporary order was entered that awarded physical custody of all three children to Loretta. On November 21, 2008, Danyel filed a petition for divorce. In early 2009, the chancellor entered a temporary order awarding Danyel custody of Michael and Loretta custody of Gabriel and Uriel.
 

 ¶ 2. On May 6, 2010, Loretta was granted a divorce on the ground of adultery. Danyel was awarded custody of the three children, and Loretta was ordered to pay $340 per month in child support. Loretta now appeals, asserting that the chancellor erred in awarding custody of the children to Danyel. Other facts pertinent to the issue on appeal will be discussed as necessary.
 

 STANDARD OF REVIEW
 

 ¶ 3. The standard of review in child-custody cases is quite limited, and in order to reverse the chancellor’s findings, the chancellor must be manifestly wrong, clearly erroneous, or have applied an erroneous legal standard.
 
 Hensarling v. Hensarling,
 
 824 So.2d 583, 586 (¶ 7) (Miss.2002).
 

 DISCUSSION
 

 ¶ 4. In her only issue on appeal, Loretta argues that the chancellor erred in awarding custody of the children to Da-nyel. It is well settled that in child-custody cases, the polestar consideration is the best interest of the child.
 
 Albright v. Albright,
 
 437 So.2d 1003, 1005 (Miss.1983). The factors used to determine what is in the best interest of a child with regard to custody are: (1) the age, health, and sex of the child; (2) a determination of the parent who has had the continuity of care prior to the separation; (3) which parent has the best parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of the parents and responsibilities of that employment; (5) the physical and mental health and age of the parents; (6) the emotional ties of the parent and child; (7) moral fitness of the parents; (8) the home, school, and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) the stability of the home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship.
 
 Id.
 

 ¶ 5. In determining whether the chancellor abused his discretion in applying the
 
 Albright
 
 factors, the appellate court “reviewfs] the evidence and testimony presented at trial under each factor to ensure [the chancellor’s] ruling was supported by record.”
 
 Hollon v. Hollon,
 
 784 So.2d 943, 947 (¶ 13) (Miss.2001). The chancellor found that three factors favored Loretta; six factors favored Danyel; and two were neutral. Loretta does not challenge the chancellor’s findings on every
 
 Albright
 
 factor. Rather, Loretta contends that the chancellor erred in his findings with regard to factors three, four, six, and eight.
 

 Parenting Skills and Willingness and Capacity to Provide Primary Child Care
 

 ¶ 6. We first note that Loretta has treated this factor as two separate factors. The chancellor found that Loretta had failed to seek help offered by social services in regard to her parenting skills. Loretta and Michael had a contentious relationship that resulted in Loretta pleading guilty in October 2008 to a charge of domestic violence. Furthermore, Loretta
 
 *922
 
 was investigated several times by the Department of Human Services (DHS) due to her physical abuse of Michael. DHS determined that Loretta’s attempts to restrain her son were “abusive and inappropriate.” Patti Golden, who was appointed guardian ad litem for the children, stated that Loretta used corporal punishment to control her children, which was strictly prohibited by a prior court order. Loretta also allowed her sister, Juanita, and Juanita’s daughter to punish the children physically, which was also prohibited by a prior court order. There was sufficient evidence in the record to weigh this factor in favor of Danyel.
 

 Employment and Responsibilities of That Employment
 

 ¶ 7. The chancellor determined that this factor favored Danyel slightly because he was available for the children in the morning before school; he was often at home when the children finished school; and his work schedule allowed greater flexibility. Danyel was also available for his children’s extracurricular activities and was able to coach his children’s athletic teams. The chancellor found that Loretta worked longer hours than Danyel, was not at home when the children finished school, and was not always available during school hours. Furthermore, Loretta relied upon Juanita and Juanita’s daughter to provide after-school care for her children — a fact that Golden had recommended against. There was sufficient evidence in the record to find that this factor favored slightly Danyel.
 

 Emotional Ties
 

 ¶ 8. The chancellor determined that this factor favored Danyel mainly because of Loretta’s abuse of the children, especially Michael, and her unwillingness to follow court orders or the recommendations of Golden and DHS. There was sufficient evidence in the record to support the chancellor’s findings.
 

 Home, School, and Community Record
 

 ¶ 9. The chancellor found that this factor favored Danyel for several reasons. Although Danyel lives with his girlfriend and her children, testimony showed that Michael’s behavior and grades improved after he went to live with Danyel. The two younger boys, noted by Golden to be uncontrollable and admittedly so by Loretta, were well behaved with Danyel. Loretta lived with her mother, Juanita, Juanita’s daughter, and other family members on occasion. Loretta’s mother had been diagnosed with schizophrenia, and Juanita’s daughter had been diagnosed with a mental deficiency. At one point, both Loretta and Juanita’s brother, Carl, had lived with them. Carl had also been diagnosed with schizophrenia and had a history of violence toward others. The children witnessed one of these violent outbursts and had to hide while waiting for the police to respond. The chancellor noted that Danyel encouraged the two older boys to play sports and that Danyel had coached Michael’s football team. Michael also played drums at a church Danyel regularly attended. Furthermore, there was no evidence that Danyel ever used corporal punishment on the children. There was sufficient evidence for the chancellor to determine that this factor favored Danyel.
 

 ¶ 10. We note that Loretta also contends that the chancellor erred in finding that she did not overcome the presumption as stated in Mississippi Code Annotated section 93 — 5—24(9)(a)(i) (Rev.2004), which states:
 

 In every proceeding where the custody of a child is in dispute, there shall be a rebuttable presumption that it is detri
 
 *923
 
 mental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody[,] or joint physical custody of a parent who has a history of perpetrating family violence.
 

 The statute requires the chancellor to make written findings in determining whether the presumption was met. Section 93 — 5—24(9)(a)(iii) lists six factors that chancellors are required to consider. The chancellor made extensive findings in regard to this statutory directive and ultimately determined that Loretta had not overcome the presumption. We find substantial evidence to support the chancellor’s findings. Many of the chancellor’s findings were previously discussed, namely Loretta’s continued corporal punishment of the children in violation of a court order. Furthermore, the chancellor noted that Loretta had the opportunity to enroll in parenting and anger management classes but declined to do so because she did not believe she needed assistance.
 

 ¶ 11. We find that there was substantial evidence in the record to support the chancellor’s decision to award custody of the children to Danyel.
 

 ¶ 12. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ„ CONCUR. MYERS, J., NOT PARTICIPATING.